**FARM LABOR ORGANIZING COMMITTEE, et al., Plaintiffs,**

v.

**The OHIO STATE HIGHWAY PATROL, et al., Defendants.**

**No. 3:96CV7580.**

United States District Court, N.D. Ohio, Western Division.

Aug. 17, 1998.

William B. Senhauser, John Mark Finnegan, Equal Justice Foundation, Toledo, OH, for plaintiffs.

Allen P. Adler, Carol Hamilton O'Brien, Office of The Attorney General, Corrections Litigation Section, Columbus, OH, for defendants.

## Order

CARR, District Judge.

This is a civil rights case in which the plaintiffs allege unlawful and unconstitutional practices by the defendants. Plaintiffs assert claims under 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201 *et seq.* for violations of the First, Fourth, and Fourteenth Amendments. Also, plaintiffs seek relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, as amended. Finally, plaintiff's bring pendent state claims under Ohio constitutional and common law. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Pending is plaintiffs' motion for class certification (Doc. 78). For the following reasons, plaintiffs' motion shall be granted.

### Facts

Plaintiffs are Hispanic migrant workers who claim that, during traffic stops, the Ohio State Highway Patrol (OSHP) violated their constitutional rights with a pattern and practice of searching and detaining them on the basis of race or national origin, questioning them about their immigration status, and/or unjustifiably confiscating immigration documents without providing adequate substitutes. On December 8, 1997, I entered a preliminary injunction that provided:

> "(A) The officers, agents, and employees of the Ohio State Highway Patrol are enjoined from questioning motorists about their immigration status 1) without reasonable suspicion based on articulable objective facts arising either a) from the circumstances of the initial seizure of motorists or b) other circumstances arising during such seizure that such motorists are in violation of federal law relating to immigration, or 2) uncoerced and otherwise lawful consent to such questioning; and (B) The officers, agents, and employees of the Ohio State Highway Patrol are enjoined from seizing immigration documents from motorists absent lawful cause for doing so."

If a legal seizure occurs, the OSHP is ordered to provide forthwith fully effective substitute documents. (Doc. 67).

Plaintiffs now move for an order certifying this case as a class action under Fed.R.Civ.P. 23(b)(2) for the purpose of obtaining a permanent injunction on behalf of all current and future Hispanic motorists and passengers in Ohio who are involved in traffic stops by the OSHP and are interrogated about their immigration status or suffer the seizure of their lawfully issued immigration documents.

The named plaintiffs, Jose Aguilar and Irma Esparza, have been subjected to both of the alleged wrongful acts of the OSHP. During traffic stops they have been interrogated about their immigration status and suffered the loss of their lawfully issued immigration documents. While the named plaintiffs seek monetary damages for themselves, they do not seek to certify a class for damages.

### Discussion

Fed.R.Civ.P. 23(a) states that one or more members of a class may sue as representatives on behalf of all members when the following conditions are met: 1) the class is so numerous that joinder of all members is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representatives are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class. Additionally, one of the conditions of Rule 23(b) must be satisfied for a class action to be maintained. Plaintiff's seek to maintain their suit under Rule 23(b)(2), which provides that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole".

Before discussing each of these elements, it should be established that plaintiffs are members of an identifiable class and that they have standing to bring this action. Plaintiffs have defined the proposed class as "all current and future Hispanic motorists and/or passengers traveling in Ohio, who are involved in traffic stops by officers, agents or employees of the Ohio State Highway Patrol, and are questioned about immigration matters, or suffer the seizure of their lawfully issued immigration documents." (Doc. 78 at 3). This class is clearly defined and there should be no difficulty in ascertaining whether certain individuals are members of the class.

Defendants argue in their memorandum in opposition to plaintiffs' motion that the named plaintiffs do not have standing to bring this suit. I have already established that plaintiffs Aguilar and Esparza "meet the three requirements of standing and can proceed with their motion for a preliminary injunction." (Doc. 67). The issue of standing need not be revisited.

### I. Numerosity

Rule 23(a)(1) requires that joinder of all class members be impracticable or difficult, not impossible. It is well established that impracticability of joinder is not determined by a strict numerical test; there is no minimum number that automatically precludes class action relief. *See Senter v. General Motors Corp.*, 532 F.2d 511, 522 n. 24 (6th Cir.1976) (*citing Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir.1970)).

Defendants argue that the plaintiffs have failed to meet their burden of showing that the number of persons in the class is so numerous that joinder is impracticable, stressing that two persons are not so numerous as to make joinder impracticable. Defendants' argument, however, is not well taken in this case.

To begin, the defendants' own pleadings and evidence indicate that the conduct complained of by the plaintiffs is not isolated. Rather, the defendants' practice is widespread and continuing. Because the defendants have admitted to using the practices complained of to identify over one thousand motorists as illegal aliens, the argument that the proposed class is not sufficiently numerous is not persuasive.

The fact that there are currently only two named plaintiffs with standing does not mean that the class is not numerous. Again, defendants' own evidence indicates the class is already large in number, and likely to grow continually. It is not necessary that the plaintiffs define a proposed class such that every member can be identified immediately. *Bremiller v. Cleveland Psychiatric Inst.*, 898 F.Supp. 572 (N.D.Ohio 1995). The record indicates that the number of members and potential members of the proposed class is great, and I am persuaded that joinder of all members would be impracticable. *See Senter*, 532 F.2d at 522 ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings, and an appellate judge will generally defer to the District Court's determination that a class is sufficiently numerous to make joinder impractical."); *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1013 (W.D.Mich.1987) (courts may assume joinder is impracticable when common sense indicates that class size is large).

Also, several factors indicate that joinder would be impracticable and that class certification is appropriate. In deciding whether joinder would be impracticable, factors such as judicial economy through avoiding multiple lawsuits, geographical dispersion of class members, feasibility of identifying and locating class members, financial resources of class members, ability or motivation of class members to institute individual suits, and requests for prospective and injunctive relief that could affect future class members are significant. *See 5 James Wm. Moore, Moore's Federal Practice § 23.22[2], [5], [7] (3d ed.1998).* The nature of the action and the type of class certification sought are also important. When these factors are considered in this case, they lead to the conclusion that joinder of all class members is impracticable.

Members of the proposed class are geographically dispersed. The class includes travelers in the state of Ohio, not residents. Almost all members of the proposed class live outside the state of Ohio for significant parts of the year. (Doc. 78 at 6). Because they travel often, locating and assembling them for joinder is impracticable.

Joinder is not only impracticable because of the difficulty in locating and assembling current class members, but also because of the large number of future class members. In *Afro–American Patrolmen's League v. Duck*, 38 Ohio Misc. 1, 366 F.Supp. 1095, 1099 (1973) (*rev'd in part on other grounds*, 503 F.2d 294 (6th Cir.1974)), Judge Don J. Young of this court held that even if current members of the class were capable of bringing suit individually, class certification was appropriate because of the large number of people who would suffer in the future and could not be presently ascertained. The court further stated that class actions are particulary well suited to determine the rights of such groups. Certification is appropriate here for the same reasons.

Also, members of the proposed class lack the financial ability and the knowledge necessary to bring individual actions. The class members are poor; many of them work for less than the minimum wage as migrant farm workers. (Doc. 78 at 6). They have little knowledge of their constitutional rights and may well not know where to go to obtain legal help, even if they could afford it. Thus, plaintiffs' argument that the issues raised in this case are not easily addressed on a case by case basis is well taken. *See Rodriguez*, 672 F.Supp. at 1014 (holding that geographical dispersion, poverty, lack of sophistication, and reluctance to sue individually contribute to the finding that joinder is impracticable). If the plaintiffs are not granted class status then the conduct complained of will rarely, if ever, be addressed and remedied in federal court.

Finally, the nature of the action and the type of class certification the plaintiffs seek indicate that class certification is appropriate here. The Sixth Circuit has held that in civil rights actions involving racial discrimination "the numerosity requirement is usually met by the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974). Additionally, the court stated that "in attempting to define a(b)(2) class, it should be noted that the category may in some instances be quite broad in scope. The nature of the primary relief sought in this category, injunctive or declaratory relief, does not require that the class be as narrowly confined as either (b)(1) or (b)(3)." *Id.* In reversing and remanding the district court's dismissal of a motion seeking class certification in an action where the plaintiff alleged racial discrimination in housing, the court suggested that class certification might be appropriate even though there was only one named plaintiff.

## II.  Common Questions of Law or Fact

■ Plaintiffs' complaint has questions of both law and fact that are common to the class. The legal question involved—whether defendants' practices are illegal and unconstitutional—is common to all class members. Likewise, the factual question—the exact nature and extent of defendants' practices—is common to all members. It does not matter that the exact circumstances surrounding each class member's traffic stop and subsequent questioning or loss of legally obtained immigration documents may be different. If the facts surrounding each plaintiff's claim needed to be identical, it would be nearly impossible to maintain class actions at all. *See e.g. Senter*, 532 F.2d at 524 (the fact that each decision to hire, fire, or promote an employee involves individual considerations does not fail the commonality requirement when the decisions are made as part of a class-wide discrimination practice); *Sweet v. General Tire and Rubber Co.*, 74 F.R.D. 333, 335 (N.D.Ohio 1976) (when members of the class have been affected by a general policy of the defendant and that policy is the focus of the litigation, it does not matter that some plaintiffs' claims involve different specific fact patterns).

## III.  Claims of Class Representatives are Typical of the Class

■ The Rule 23(a)(3) requirement that the representatives have claims that are typi-

cal of the class ensures that the named plaintiffs will serve the interests of class members. *See In re American Med. Sys., Inc.,* 75 F.3d 1069, 1083 (6th Cir.1996). In general, if the representatives' claims arise from the same course of conduct or practice, and are based on the same legal theory as those of other class members, the typicality requirement is met. *Id.*

■ Here the representatives' claims do arise from the same course of conduct as class members'. That some specific facts may vary does not mean the claims are not typical. *See Senter,* 532 F.2d at 525, n. 31 (*citing Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2d Cir.1968)). Furthermore, there is nothing to suggest that the named plaintiffs have any interests antagonistic to the class. The Plaintiffs share with the class the common interest of having the OSHP permanently enjoined from the complained of practices.

### IV. Class Representatives Will Fairly and Adequately Represent the Class

■ In the Sixth Circuit, "there are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with the unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter,* 532 F.2d at 525. In light of these requirements, I conclude that the last of the four prerequisites for class certification under Fed.R.Civ.P. 23(a) is met by the plaintiffs.

As has already been established, the named plaintiffs have common interests with the unnamed plaintiffs. The second requirement is also easily met in this case, as the plaintiffs are represented by counsel who has participated in more than twenty class actions and is experienced in civil rights and poverty law. (Doc. 78 at 10).

### V. The Requirements of Rule 23(b)(2) are Satisfied

The demands of Fed.R.Civ.P. 23(b)(2) have also been met. Indeed, the OSHP, the party opposing class certification, "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." This action involves class-wide discrimination, and so is "particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single revision remedy." *Senter,* 532 F.2d at 525 (*citing Jenkins v. United Gas Corp.,* 400 F.2d 28, 32–35 (5th Cir.1968)). The *Senter* court further noted that the Advisory Committee for the 1996 revision of Rule 23 used a civil rights case where a party is charged with unlawful discrimination against a class, usually one whose members are incapable of specific enumeration, as an illustration of a 23(b)(2) action. *Id.* at 525–26.

### Conclusion

Because the requirements of Fed.R.Civ.P. 23(a) and 23(b)(2) have been satisfied by the plaintiffs, it is hereby

**ORDERED THAT** plaintiffs' motion for class certification (Doc. 78) be, and hereby is, granted.

So ordered.