Elna HOFFMAN, et al., Plaintiffs,

v.

HONDA OF AMERICA MFG.,
INC., Defendant.

No. C–3–97–248.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 9, 1999.

Jeffrey A. Dittmer, Teaford Rich Crites & Wesp–2, Columbus, OH, Robert Franklin Laufman, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley–1, Cincinnati, OH, Michael Jay O'Hara, O'Hara Ruberg Taylor Sloan & Sergent, Edgewood, KY, Robert Alan Steinberg, Waite Schneider Bayless & Chelsey, Cincinnati, OH, for Elna Hoffman, Paula Knight, Patricia Dunn, Kimberly Maxwell, plaintiffs.

Mary Ellen Fairfield, Vorys Sater Seymour & Pease, Columbus, OH, James A. Wilson, Jr., Vorys, Sater, Seymour & Pease, Columbus, OH, for Honda of America Manufacturing, Inc., Defendant.

ENTRY REGARDING IMPACT OF *ALLISON V. CITGO PETROLEUM CORPORATION,* 151 F.3d 402 (5th Cir.1998) UPON PLAINTIFFS' REQUEST FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23(b)(2)

RICE, Chief Judge.

The Plaintiffs bring this litigation as a class action, on behalf of themselves and all others similarly situated, alleging that Defendant has engaged in a pattern and practice of "systematically excluding women from employment opportunities at its plants in Anna, Marysville and East Liberty, Ohio." Plain-

tiffs' Second Amended Complaint (Doc. # 31) at ¶ 1. The Plaintiffs propose to represent all females who have applied for positions or who have been employed at those plants, since June 1, 1991. *Id.* at ¶ 21. According to the Plaintiffs, this litigation may be maintained as a class action pursuant, to Rule 23(b)(2) of the Federal Rules of Civil Procedure.[1] In their Second Amended Complaint, the Plaintiffs allege that the Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by engaging in "a pattern and practice of discriminating against and retaliating against plaintiffs in awarding work assignments and skilled positions, in transfers, in promotions, and in making reasonable accommodations for injured plaintiffs, all due to their gender." *Id.* at ¶ 30.[2] The Plaintiffs also set forth claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the public policy of Ohio. The Plaintiffs seek various forms of relief, including an injunction prohibiting Defendant from continuing its discriminatory practices, reinstatement, back pay and front pay (where reinstatement is not practicable), as well as compensatory and punitive damages.

■ During a discovery conference conducted on June 27, 1998, the Court, at the Defendant's request, directed the parties to brief the impact of the Fifth Circuit's decision in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998), on the Plaintiffs' request that the Court certify this action as a class action pursuant to Rule 23(b)(2). Of particular importance, the Fifth Circuit

therein addressed the impact of the availability of compensatory and punitive damages, under 42 U.S.C. § 1981a, on a request to certify an action pursuant to that Rule.[3] The parties have filed their memoranda addressing *Allison*, and the Court now turns to the impact of that decision on a request to certify a class action under Rule 23(b)(2).[4]

Rule 23(b)(2) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

According to the Advisory Committee's Notes, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 39 F.R.D. 98, 102 (1966). As originally enacted, a Title VII plaintiff could obtain only equitable relief, such as reinstatement and back pay. The Sixth Circuit has indicated that the availability of an award of back pay in a Title VII action did not preclude certification of such an action under Rule 23(b)(2). *Alexander v. Aero Lodge No. 735*, 565 F.2d 1364, 1372 (6th Cir.1977); *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.), *cert. denied*, 429 U.S. 870, 97

---

1. The Plaintiffs also contend that this litigation can be maintained as a class action under Rule 23(b)(1)(A), alleging that inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for Defendant to follow. *See* Doc. # 31 at ¶ 27.

2. The Plaintiffs also assert that this allegation states a violation of Chapter 4112 of the Ohio Revised Code and the common law of Ohio.

3. Section 1981a is merely a remedial statute, affording the remedy of compensatory and punitive damages to a plaintiff who has been the victim of intentional discrimination in violation of Title VII. That statutory provision does not afford such a plaintiff a separate cause of action.

4. The Plaintiffs had initially alleged that this litigation could be certified as a class action pursuant to Rule 23(b)(3). Such an allegation is absent from their Second Amended Complaint. During the June 27th discovery conference, the Plaintiffs, in response to the Defendant's request to brief *Allison*, mentioned that they might seek to allege once again that this action may be maintained as a class action pursuant to that Rule. Although the Plaintiffs argue that the Court could employ a hybrid approach, under which Rule 23(b)(2) is utilized for claims for injunctive relief and Rule 23(b)(3) is reserved for claims for damages, the Plaintiffs have not sought leave to amend their most recent pleading to allege that this litigation may be maintained as a class action under Rule 23(b)(3).

S.Ct. 182, 50 L.Ed.2d 150 (1976).[5]  However, Congress expanded the remedies available to a Title VII plaintiff when it enacted 42 U.S.C. § 1981a, as part of the Civil Rights Act of 1991.  A Title VII plaintiff, alleging that she has been the victim of intentional discrimination, is now entitled to recover compensatory and punitive damages.[6]

In its Memorandum (Doc. # 90), the Defendant argues that *Allison*, as a matter of law, prevents the Plaintiffs from utilizing Rule 23(b)(2) to certify a class action, setting forth claims under Title VII and requesting compensatory and punitive damages under § 1981a.  Therefore, for purposes of analyzing that position, the Court assumes that the Plaintiffs can establish the four requisite elements for the maintenance of a class action contained in Rule 23(a) (i.e., numerosity, commonality, typicality and adequacy of representation).  The Court will also assume that the Defendant has acted "on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  The only question the Court addresses is whether a Title VII action, in which the plaintiffs seek compensatory and punitive damages, as well as injunctive relief, can *ever* be certified under Rule 23(b)(2).[7]  The Court begins its discussion of that question by examining *Allison* in more detail.

*Allison* was the first and, to date, the only Circuit to address the impact of § 1981a upon the certification of a class action under Rule 23(b)(2).[8]  That litigation was brought by more than 130 named plaintiffs, who alleged that the defendant had "engaged in class-wide racial discrimination with respect to general hiring, promotion, compensation, and training policies at its manufacturing facilities in Lake Charles, Louisiana."  151 F.3d at 406.  The plaintiffs challenged a number of employment practices under theories of both disparate impact and systemic disparate treatment (i.e., a pattern and practice theory).  The Plaintiffs sought to maintain that litigation as a class action, pursuant to Rule 23(b)(2).  The District Court overruled the plaintiffs' motion to certify the litigation as a class action, concluding that the plaintiffs' demand for an award of compensatory and punitive damages, pursuant to § 1981a, meant that injunctive relief was not predominant, and that, therefore, the action

---

5.  In those cases, the Sixth Circuit did not expressly endorse or reject the position contained in the Advisory Committee's Notes.  The Circuits which have addressed the question have unanimously concluded that a class may be certified under Rule 23(b)(2), only if the predominant relief sought is injunctive or declaratory.  *Allison*, 151 F.3d at 410; *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C.Cir.1997); *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir.1995); *Zimmerman v. Bell*, 800 F.2d 386, 389–90 (4th Cir.1986); *In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3rd Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986); *Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir.1983); *Simer v. Rios*, 661 F.2d 655 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2nd Cir.1968).  *Accord, In re Jackson National Life Insurance Company Premium Litigation*, 183 F.R.D. 217 (W.D.Mich.1998) ("The Court has carefully considered plaintiffs' motion for class certification and found it wanting.  Notwithstanding their satisfaction of the requirements of Rule 23(a), plaintiffs have failed to demonstrate that nationwide class certification is appropriate under Rule 23(b)(2) by showing that the relief sought is primarily declaratory and injunctive, rather than monetary.").

6.  Compensatory and punitive damages are not available in disparate impact cases.  Herein, the Plaintiffs have not relied upon a disparate impact theory.

7.  Thus, the Court rejects the Plaintiffs' argument that it should not address the impact of *Allison*, until they have had an adequate opportunity to conduct discovery.  Herein, the Court addresses a legal question, rather than one of a factual nature.

8.  The Plaintiffs cite *Eubanks v. Billington*, 110 F.3d 87 (D.C.Cir.1997), wherein the District of Columbia Circuit approved the certification of a Title VII class action under Rule 23(b)(2), even though the plaintiffs had sought monetary relief in the form of back pay and front pay.  (Of course, back pay and front pay, in lieu of reinstatement, are considered forms of equitable relief, rather than compensatory damages).  Although *Eubanks* was decided after the effective date of § 1981a, that litigation arose out of a charge of discrimination that had been filed in 1975.  Given that the remedies provided by § 1981a are not to be applied retroactively, the District of Columbia Circuit was not called upon to address the impact of that statute upon certification under Rule 23(b)(2).

could not be certified under Rule 23(b)(2). The Fifth Circuit described the analysis in which the District Court had engaged:

> To ascertain the predominant form of relief sought, the district court considered whether: (1) the request for money damages was integral to and flowed directly from the injunctive or declaratory relief; (2) the request for money damages affected the cohesiveness of the class and the homogeneity of interests; (3) issues common to the claims for injunctive or declaratory relief predominated; and (4) the money damages arose out of conduct based on policies generally applicable to all plaintiffs. Applying these factors, the court concluded that the plaintiffs' claims for money damages predominated over their claims for nonmonetary relief, making certification of the class inappropriate under (b)(2).

Upon appeal,[9] the Fifth Circuit noted that, although it was required to review the District Court's decision under an abuse of discretion standard, an application of an incorrect legal standard would constitute an abuse of discretion. The court then turned to the standards employed by the District Court. Initially, the *Allison* panel agreed with the District Court's conclusion that a class could be certified under Rule 23(b)(2), only if injunctive relief predominated over a request for monetary damages. The panel then turned to the question of the standards that must be applied to determine whether requested injunctive relief does indeed predominate. Based upon its examination of the underlying rationale for each of the three subdivisions of Rule 23(b), the court concluded:

> In sum, the predomination requirement of Rule 23(b)(2) serves essentially the same functions as the procedural safeguards and efficiency and manageability standards mandated in (b)(3) class actions. In balancing the competing interests underlying the class action device, (b)(2)'s predomination requirement serves two basic purposes: first, it protects the legitimate interests of potential class members who might wish to pursue their monetary claims individually; and, second, it preserves the legal system's interest in judicial economy.

Consistent with this analysis, we reach the following holding: monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. *Accord Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 928–29 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. *See* Fed.R.Civ.P. 23(b)(2) (referring only to relief appropriate "with respect to the class as a whole"). Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. *See* Manual for Complex Litigation, supra, at 348 (citing *Simer v. Rios,* 661 F.2d 655 (7th Cir.1981)); *see also, e.g., Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439 (N.D.Cal.1994) (defendant's liability entitled class to a statutorily mandated damage award). That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

151 F.3d at 414–15.

Like the Sixth Circuit, the Fifth had long held that the availability of an award of back pay under Title VII did not prevent an action

---

9. The District Court had certified its decision for an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

from being certified under Rule 23(b)(2). *See Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir.1974). The *Allison* panel distinguished *Pettway*, on the basis that an award of back pay in a Title VII action is an equitable remedy similar to other forms of injunctive relief, designed to make a plaintiff whole, and that, therefore, *Pettway* had not addressed the issue of whether an action seeking compensatory and punitive damages, as well as equitable remedies, can be certified under Rule 23(b)(2). The *Allison* court also indicated that approach was consistent with *Pettway*, writing:

> As the plaintiffs correctly point out, *Pettway* stated that the (b)(2) inquiry into whether one form of relief predominates over another involves consideration of the "pragmatic ramifications of adjudication" and the effect of the relief sought, rather than any special attributes of the class involved. *See* [494 F.2d] at 256 (citing 3B Moore's Federal Practice § 23.45[1] at 703 (2d ed.1969)). The incidental damages standard actually takes these considerations into account. We recognize that, as a matter of degree, whether a given monetary remedy qualifies as incidental damages will not always be a precise determination. Nor is it intended to be. "[C]omplex cases cannot be run from the tower of the appellate court given its distinct institutional role and that it has before it printed words rather than people." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). The district courts, in the exercise of their discretion, are in the best position to assess whether a monetary remedy is sufficiently incidental to a claim for injunctive or declaratory relief to be appropriate in a(b)(2) class action.

151 F.3d at 416.

Based upon the foregoing analysis, the *Allison* court concluded that the District Court had, in the main, utilized appropriate standards to determine whether the plaintiffs' request for injunctive relief was predominant,[10] and turned to the question of whether the District Court had abused its discretion in the manner in which it had applied those standards. Initially, the Fifth Circuit noted that circuit precedent[11] indicated that compensatory damages under § 1981a could not be presumed from the fact of discrimination; rather, specific individualized proof was necessary. "Compensatory damages may be awarded only if the plaintiff submits proof of actual injury, often in the form of psychological or medical evidence, or other corroborating testimony from a third party." 151 F.3d at 417. Thus, both the entitlement to and the amount of compensatory damages, for each member of the class, would have to be determined on an individualized basis. The Fifth Circuit also concluded that punitive damages had to be decided on the same basis, since the plaintiffs had not alleged that each member of the class had been affected in the same manner by the defendant's alleged discriminatory practices. Based upon those conclusions, the panel held that neither compensatory nor punitive damages were incidental, as that term had been defined. Therefore, it was unable to "detect an abuse of discretion in the district court's finding that claims for compensatory and punitive damages were inappropriate for (b)(2) certification." *Id.* at 418.

One could argue that *Allison* stands for certain unremarkable propositions, to wit: a case cannot be certified under Rule 23(b)(2), if monetary damages are the predominant type of relief sought; the availability of compensatory and punitive damages, pursuant to § 1981a, is a factor to consider when determining the predominant type of relief sought;[12] and a District Court's denial of a

---

10. The Fifth Circuit did hold that it had been inappropriate for the District Court to consider whether common issues predominated over other issues; however, any error in that regard was harmless, since the District Court's analysis of this factor had been separate from and in addition to its consideration of the appropriate factors. 151 F.3d at 416.

11. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927 (5th Cir.1996), *cert. denied*, 519 U.S. 1091, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997).

12. The Plaintiffs argue that it defies logic to hold that the availability of compensatory and punitive damages under § 1981a can serve as the basis for preventing the certification of a Title VII class action pursuant to Rule 23(b)(2). As

request to certify a class action under Rule 23(b)(2) will not be reversed in the absence of an abuse of discretion. Such an interpretation is not fanciful, given the fact that the Fifth Circuit's decision is replete with references to the discretion invested in the District Court under Rule 23, particularly the passage which is quoted above on page 534. So interpreted, this Court would reject the Defendant's assertion that *Allison* prevents, *as a matter of law*, not only this Court but any court from certifying a lawsuit, under Rule 23(b)(2), in which the plaintiffs seek compensatory and punitive damages pursuant to § 1981a. Rather, under this interpretation of *Allison*, whether to certify this litigation can be determined only through an informed exercise of this Court's discretion, which will obviously require the Court to consider all of the evidence and arguments of counsel.

However, *Allison* can also be read as establishing certain restrictive, formulaic principles of law, to wit: injunctive and declaratory relief predominate, only if the money damages sought are incidental (i.e., monetary relief predominates in a subsection (b)(2) analysis, unless it is incidental to requested injunctive or declaratory relief); money damages are incidental, only if they flow "directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief" (151 F.3d at 415); and compensatory and punitive damages under § 1981a are not incidental damages. Accepting the Fifth Circuit's definition of incidental and, further, given the necessity of individualized proof to support an award of compen-

satory and punitive damages under § 1981a in that Circuit, the Court assumes for present purposes that such damages do not constitute incidental damages. Thus, this Court turns to the question of whether to accept the Fifth Circuit's conclusion that injunctive or declaratory relief will predominate only if the money damages sought are incidental, as defined by that court. If such conclusion is accepted by this Court, then the Plaintiffs cannot maintain this litigation as a class action under Rule 23(b)(2).

As is stated above, Rule 23(b)(2) provides that an action may be certified as a class action if the party opposing the class has acted in a manner generally applicable to the class, making final injunctive or corresponding declaratory relief appropriate to the class as a whole. Rule 23(b)(2) does not expressly prohibit courts from employing it to certify an action in which the class seeks both injunctive relief and money damages. However, as has been seen, the Advisory Committee's Notes, which have been endorsed by all Circuits that have addressed the issue, including the Fifth, indicate that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates ... *predominantly* to money damages." 39 F.R.D. 98, 102 (1966) (emphasis supplied).[13] Predominant is defined as "holding an ascendency; having superior strength, influence, authority or position; controlling, dominating, prevailing." *Webster's Third International Dictionary*, at 1786. Thus, it incorporates the concept of primacy; relief relates predominantly to money damages when that is the form of

---

the Plaintiffs correctly point out, § 1981a was enacted as part of the Civil Rights Act of 1991, a statute that was intended to increase the remedies that civil rights plaintiffs enjoy. Nevertheless, the fact remains that the Advisory Committee's Notes indicate that certification under Rule 23(b)(2) is inappropriate, if the relief sought relates "predominantly to money damages." Moreover, every Circuit that has expressly addressed the issue has endorsed the statement contained in that Note. In addition, Plaintiffs cannot contest that the availability of compensatory and punitive damages under § 1981a is, at a minimum, a factor to be considered in the predominance equation. Thus, while Congress may not have intended to limit the ability of plaintiffs to obtain certification of Title VII actions pursuant to Rule 23(b)(2), the enactment of § 1981a poses a potentially dispositive impediment to same.

**13.** The Plaintiffs argue that predominance has no place in the determination of whether to certify a class under Rule 23(b)(2). The case cited by Plaintiff for this proposition is inapposite. In *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993), the court merely indicated that the question of whether common issues predominate over individual ones is not implicated by Rule 23(b)(2). Indeed, that question is a concern for Rule 23(b)(3). The issue addressed by the Fifth Circuit in *Allison*, in accordance with the directive set forth in the Advisory Committee's Notes, was whether the type of relief sought by the plaintiffs was predominantly money damages.

relief in which the plaintiffs are primarily interested. To make such a determination, the District Court, after considering the evidence and arguments of counsel and in the exercise of its discretion, must make an assessment of the relative importance of the remedies sought, given all of the facts and circumstances of the case. For instance, in *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir.1995), the District Court refused to certify an action under Rule 23(b)(2), in which plaintiffs had sought injunctive relief in the form of medical monitoring, as well as compensatory or money damages, concluding that the plaintiffs were primarily seeking such damages. Upon appeal, the Tenth Circuit affirmed, holding that the District Court had not abused its discretion by concluding, under the facts and circumstances of that litigation, that money damages, rather than injunctive relief in the form of a medical monitoring fund, was the primary type of relief sought by the plaintiffs. In *In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3rd Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986), the District Court refused to certify a class, despite the presence of a request for injunctive relief, since the plaintiffs' claims were essentially for money damages. The Third Circuit affirmed, concluding that, given the facts and circumstances of that litigation, the District Court had not abused its discretion. In contrast, under the Fifth Circuit's test, money damages *are* predominant, seemingly without the need to consider the unique facts and circumstances of a given lawsuit, unless they are incidental, i.e., flowing "directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." 151 F.3d at 415. If the request for monetary damages does not flow directly from the liability to the class as a whole, a District Court would be without the discretion to certify a class under Rule 23(b)(2), regardless of whether the plaintiffs were primarily seeking injunctive or declaratory relief or regardless of any other factor in that litigation. Such a standard is contrary to the decisions reached by other courts, as well as the language employed by the Advisory Committee in its Notes.

■ In sum, the Court concludes that an action in which both injunctive relief and money damages are sought *may* be certified as a class under Rule 23(b)(2), as long as money damages do not constitute the predominate type of relief requested. This Court will be able to decide what type of relief is predominate only after considering the evidence presented at a class certification hearing and the arguments of counsel. Accordingly, this Court declines to follow *Allison*, to the extent that, therein, the Fifth Circuit held that class certification under Rule 23(b)(2) is inappropriate whenever the plaintiffs seek damages under § 1981a, because such damages are not incidental.[14] In addition, the Court rejects the Defendant's request that it rule, *as a matter of law*, that this litigation cannot be certified pursuant to Rule 23(b)(2), merely because the Plaintiffs have requested compensatory and punitive damages under § 1981a. That said, however, the Court will consider such requests for relief when it determines, after hearing the evidence and considering the arguments of counsel, whether the Plaintiffs are seeking a remedy that is predominantly money damages.[15]

---

**14.** Outside the Fifth Circuit, there have been very few cases addressing *Allison*. In *Faulk v. Home Oil Co., Inc.*, 184 F.R.D. 645 (M.D.Ala.1999), the court endorsed the Fifth Circuit's analysis, while in *Carter v. West Publishing Co.*, 1999 WL 376502 (M.D.Fla.1999), the court concluded, as has this Court herein, that *Allison* did not mandate the conclusion that an action could not be certified, merely because the plaintiffs were seeking monetary damages.

**15.** The Defendant also argues that the Seventh Amendment poses an irreducible impediment to the Plaintiffs' request for certification under Rule 23(b)(2). In particular, the Defendant contends that the problems of predominance could not be avoided by separating the Plaintiffs' claims for injunctive relief from their request for compensatory and punitive damages under § 1981a, since that would constitute a violation of the Seventh Amendment. While the Seventh Amendment may prevent this Court from certifying this litigation as a class action, the Court will not make that determination until it has heard the evidence, considered the arguments of counsel and determined whether this litigation can be otherwise certified under Rule 23(b)(2).

The Fifth Circuit in *Allison* concluded that a lawsuit, in which compensatory and punitive damages are requested under § 1981a, could not be certified as a class action under Rule 23(b)(2), unless the requested damages were incidental (i.e., would flow to the class as a whole). In this Court's opinion, such an approach would redefine the Advisory Committee's Notes and run counter to the decisions of all other Circuits who have accepted them, since it is eminently possible that injunctive relief could be the predominant form of relief sought in a class action in which the plaintiffs have also requested non-incidental damages. Rather, this Court will follow the decisions by other Circuits, which have held that the determination of whether the requested final relief relates predominantly to money damages is dependent upon the facts and circumstances of the particular case. Whether the requested monetary damages are incidental will be but one factor to be considered in the calculus. However, the Plaintiffs should note with care that this Court has neither decided that their request for an award of compensatory and punitive damages under § 1981a is irrelevant to the issue of class certification nor given them a clear path to subsection (b)(2) class certification. On the contrary, the Court has merely determined that such request for compensatory and punitive damages does not, *as a matter of law*, prevent this litigation from being certified as a class action.

In sum, the Sixth Circuit has stressed that a lawsuit can be certified as a class action, only after a "rigorous analysis" of the prerequisites of Rule 23. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1078–79 (6th Cir.1996). The Court will engage in such an analysis, after hearing the evidence and considering the arguments of counsel. The Court will include in that calculus a consideration of the impact of § 1981a, on the Plaintiffs' request to certify this litigation under Rule 23(b)(2).[16] It cannot, however, agree with the Defendant that the availability of compensatory and punitive damages under that statute prevents, *as a matter of law*, the certification of any Title VII class action under Rule 23(b)(2).

---

**16.** By letter to the Court under date of July 26, 1999, Plaintiffs' counsel submitted an affidavit from James T. McClave ("McClave"), an expert witness retained by Plaintiff. Therein, McClave states that there is a reliable econometric approach, which could be used to calculate, on a class-wide basis, the economic impact of the Defendant's alleged discriminatory practices in hiring and promotions. Herein, the Court has addressed the issue of whether it should follow *Allison* and hold that the availability of money damages under § 1981a means, *as a matter of law*, that an action under Title VII can never be certified under Rule 23(b)(2). Accordingly, the Court has not considered McClave's affidavit or any other evidence.