Rachel REEB, Plaintiffs–Appellees,

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Belmont Correctional Institution, Defendant–Appellant.**

No. 02–3105.

United States Court of Appeals, Sixth Circuit.

Nov. 18, 2003.

Nicholas E. Kennedy, Columbus, OH, for Plaintiffs–Appellees.

Robert L. Griffin, Asst. Attorney Gen., Jack W. Decker, Columbus, OH, for Defendants–Appellants.

BEFORE: KENNEDY and COLE, Circuit Judges; and WILLIAMS, District Judge.*

KENNEDY, Circuit Judge.

Plaintiffs Rachel Reeb, Verna Brown, Glenna Mackey, and Jill Beabout, employees of defendant Ohio Department of Rehabilitation and Correction, Belmont Correctional Institution (BeCI), filed this class action complaint against their employer alleging gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e—2000e–15.[1] Defendant BeCI appeals from the district court's or-der certifying a class action under Federal Rule of Civil Procedure 23(b)(2). For the reasons explained below, we remand to the district court for it to conduct a "rigorous analysis" as to whether plaintiffs have demonstrated that the action meets all of the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2).

## I. Background

BeCI is a prison operated by the Ohio Department of Rehabilitation and Corrections. It employs approximately 528 people, some of whose positions are covered by Ohio's civil service laws while others are covered by collective bargaining agreements with three distinct unions, District 1199, OCSEA, and OEA. One Hundred Forty–One of BeCI's employees are female-some unknown number of whom are OCSEA members. The district court certified a class of all female employees who belong to or were members of OCSEA in the preceding five years.

Plaintiffs Reeb and Brown, members of OCSEA, work as female corrections officers at BeCI. Plaintiff Mackey, a member of OCSEA, also works as a corrections officer at BeCI; yet, for some period of time starting on May 18, 2000, Mackey worked as a secretary in a Temporary Work Level. Plaintiff Beabout, a member of OCSEA, began working at BeCI in 1995 as a corrections officer; on January 16, 2000, Beabout received a promotion to records officer on a permanent basis after holding that position on a Temporary Work Level as of December 1, 1999.

Plaintiffs' complaint alleges that: 1) plaintiffs "have been treated differently,

---

* The Honorable Judge Glen M. Williams, United States District Judge from the Western District of Virginia, sitting by designation.
1. Plaintiffs' complaint also named Warden Tate as a defendant and alleged various state-law claims; however, only the Title VII claim against BeCI remains, plaintiffs having voluntarily dismissed Tate as well as the state-law claims.

held to a different standard, and given different duties ... [than] similarly situated male corrections officers"; 2) plaintiffs "are frequently required to perform undesirable positions at BeCI ... [while] similarly situated male employees are not assigned to such duties"; 3) plaintiffs "are routinely pulled off of their posts and replaced with male [o]fficers because [p]laintiffs are not seen as able to handle difficult situations that may arise with inmates"; 4) plaintiffs "are routinely denied leave and/or overtime, despite having valid excuses or reasons, while similarly situated male [o]fficers are granted leave and/or overtime for much less valid excuses"; 5) plaintiffs are "routinely written up for alleged infractions or rule violations ... while similarly situated males are not disciplined for the same or more severe infractions"; 6) plaintiffs "have been denied training for various reasons ... [while] similarly situated male employees have not been denied such training for the same or any reasons"; 7) those female employees who "claimed to have had [sexual] relations with the [w]arden ... and other supervisors" are "treated substantially better than the rest of the class"; 8) plaintiffs are not promoted while less qualified male officers are promoted because such officers socialize with and bestow various gifts or services upon the warden; 9) plaintiffs have been retaliated against "in the form of increased scrutiny on their behavior and more disparate treatment" because they filed "numerous grievances and complaints regarding such discriminatory treatment" and, subsequently, hired legal counsel; 10) "[m]ale officers routinely allow the male inmates to harass, intimidate, and threaten [p]laintiffs"; 11) the warden "has interfered with the methods and developed processes" that are to protect employees such that plaintiffs have been unable to obtain relief with BeCI; and 12) plaintiffs "have routinely been denied promotions ... over less qualified, similarly situated male correction[s] officers" such that males hold seventeen out of eighteen captain and lieutenant positions. Regarding this last allegation, plaintiffs further allege that BeCI "circumvents the [usual] requirements of posting and interviewing for a [promotion] position" by routinely using "a 'temporary position' to place hand-selected males into a promotion position over more qualified females" and later making such "temporary positions" permanent so as to prevent plaintiffs "from even applying for such positions."

The complaint seeks $2 million in compensatory damages, $3 million in punitive damages, attorneys' fees and costs, and declaratory relief. The complaint explicitly seeks neither injunctive relief nor a preliminary injunction. Plaintiffs assert that their request "[t]hat the rights of class members to the relief sought herein be adjudicated and declared" is sufficient to state a claim for injunctive relief. In their motion for class certification, plaintiffs expressly state that, among other relief, they seek injunctive relief. Plaintiffs do not specify what that injunctive relief would entail.

Plaintiffs moved to certify their suit as a class action under Federal Rules of Civil Procedure 23(a) and either Rule 23(b)(2) or Rule 23(b)(3). While identifying the common question of law as "whether the defendant disparately treated female correctional officers in violation of Title VII," the district court refused to certify a 23(b)(3) class on the grounds that individualized issues regarding claims and defenses would predominate and, thus, that class litigation would not be the superior method to litigate plaintiffs' claims.[2] In partic-

---

**2.** "To qualify for certification under Rule 23(b)(3), a class must meet two requirements

ular, the court noted that defendant would likely "come forward with individualized legitimate, non-discriminatory reasons for the actions as to each plaintiff," and that each plaintiff would have to prove compensatory damages. After re-defining the proposed class, such as by limiting it to female members of OCSEA, the district court granted plaintiffs' motion for class certification under Rule 23(b)(2),[3] also holding that plaintiffs satisfied all of the requirements of Federal Rule of Civil Procedure 23(a).

Pursuant to Federal Rule of Civil Procedure 23(f), this court granted defendant BeCI leave to take an interlocutory appeal of the district court's class certification. In particular, we did so on the ground that defendant's challenge to the standard that the district court used in certifying the class under Rule 23(b)(2) and its resultant determination that plaintiffs' requested in-

junctive relief predominates their requested monetary relief in Title VII cases after 1991 is a matter of first impression in this circuit and one concerning which our sister circuits disagree.

Prior to 1991, courts routinely certified civil rights class actions under Rule 23(b)(2). Under Title VII, as originally enacted, plaintiffs could obtain only equitable relief, which courts found to include both front and back pay. However, in the Civil Rights Act of 1991, Congress amended Title VII to provide compensatory and punitive damages to victims of intentional employment discrimination. 42 U.S.C. § 1981a.[4] Defendant contends that since plaintiffs may now assert claims for money damages, Rule 23(b)(2)'s requirement, that equitable relief "predominate" bars class certification under (b)(2) where plaintiffs seek such damages.[5] In addition to this

---

beyond the Rule 23(a) prerequisites: [1][c]ommon questions must predominate over any questions affecting only individual members; and [2] class resolution must be superior to other available methods for fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks omitted).

3. Finding it persuasive, the district court principally relied on *Hoffman v. Honda of America, Manufacturing, Inc.*, 191 F.R.D. 530, 536–537 (S.D.Ohio 1999), which held that a district court may certify an action seeking both injunctive relief and monetary damages under Rule 23(b)(2) where it determines, based on the facts and circumstances of a particular case, that monetary damages are not the predominate type of relief requested, and rejected a per se bar to certification of a class seeking both injunctive and monetary relief under (b)(2).

4. Only compensatory damages are available here since the state is not subject to punitive damages.

5. *See, e.g., Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415–18 (5th Cir.1998) ("[M]onetary relief predominates in (b)(2) class ac-

tions unless it is incidental to requested injunctive or declaratory relief in that it "flow[s] directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief"; compensatory and punitive damages are not incidental damages, which should be "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective difference of each class member's circumstances."); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir.2001)("[M]onetary relief predominates in (b)(2) class actions unless it is *incidental* to" equitable relief, as set forth in *Allison*.); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898–99 (7th Cir.1999) (*Allison's* main holding is correct in that class certification under Rule 23(b)(2) when plaintiffs request monetary damages would be permissible, if at all, only where the monetary relief is incidental or tangential to the equitable relief such that it does not implicate the rights to jury trial or to notice; on remand, the district court could consider certifying the class under Rule 23(b)(3) for all purposes or certifying a Rule 23(b)(2) class for equitable relief and a Rule 23(b)(3) class for damages if it found that money damages were not incidental to the injunctive relief.); *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL–CIO,*

bright-line challenge to class certification, defendant asserts that equitable relief does not predominate under any standard. Plaintiffs urge affirmance of the district court's class certification or, alternatively, a bifurcated (b)(2) class for injunctive relief and some other method for determining damages. *See e.g. Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 163–64 (2d Cir.2001); *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL–CIO*, 216 F.3d 577, 582 (7th Cir.2000); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898–99 (7th Cir.1999).

Upon closer examination, we find that this record would not afford us an appropriate basis upon which to address such a novel and important legal question. Because the record does not indicate the injunctive relief that the plaintiffs seek, we are unable to review whether the injunctive or declaratory relief predominates over the monetary relief, as Rule 23(b)(2) requires. Moreover, we note that the district court did not have the benefit of our decision in *Coleman v. General Motors*, 296 F.3d 443 (6th Cir.2002), a case brought under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, that deals with certification under Rule 23(b)(2) when injunctive relief does not predominate over individual relief. Additionally, as explained below, it does not appear that the district court conducted the "rigorous analysis" necessary to conclude properly that the plaintiffs have met all of the requirements of Federal Rule of Civil Procedure 23(a). Consequently, we confine our analysis to Rule 23(a) and decline to determine on this record the proper standard for class certification under Rule 23(b)(2) where plaintiffs seek monetary as well as equitable relief.[6]

---

216 F.3d 577, 582 (7th Cir.2000) (*Jefferson* presents a third option, in which a district court, if monetary damages were not incidental to the requested equitable relief, could certify a class under (b)(2) for both monetary and equitable remedies while providing all class members with personal notice and an opportunity to opt out per its plenary authority under (d)(2) and (d)(5).). *But see Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 163–64 (2d Cir.2001) (Per an *ad hoc* balancing approach rather than *Allison's* "brightline bar to (b)(2) class treatment of all claims for compensatory and other non-incidental damages," a district court may certify an action under (b)(2) if, "in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case," it determines that: 1) "the positive weight or value [to the plaintiffs] of the [requested] injunctive or declaratory relief ... is predominant even though [they also request] compensatory or punitive damages"; and 2) "class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy"; equitable relief "predominates" where plaintiffs would have brought the suit without monetary damages and where the requested equitable relief "would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.").

6. We note that, should the district court certify plaintiffs' pattern-or-practice claim as a hybrid class action, such as by certifying a Rule 23(b)(2) class for equitable relief and a Rule 23(b)(3) class for damages, it must ensure that the class action complies with the Seventh Amendment. In particular, the Seventh Amendment's Trial-by-Jury Clause, which preserves the right to a trial by jury "in [s]uits at common law, where the value in controversy shall exceed twenty dollars," mandates that, once the right to a jury trial attaches to a claim, it extends to all of the factual issues that are necessary to resolve that claim. *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 169 (2nd Cir. 2001); *see Dairy Queen v. Wood*, 369 U.S. 469, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (holding that, in an action involving both legal and equitable claims that share common issues, a jury must determine the legal claims before any court determination of the equitable claims). Thus, the Trial-by-Jury Clause would bar the court from determining, in the first instance, any issue in the claim for equitable relief that is common to the claim for money damages because that would foreclose a jury from later determining that common issue in the damages claim. *See Dairy Queen*, 369 U.S. at 479; *Beacon Theatres, Inc. v.*

## II. Whether the District Court Conducted the Requisite "Rigorous Analysis" in Determining that the Action Satisfies Federal Rule of Civil Procedure 23(a)

Before certifying a class action, district courts must conduct a "rigorous analysis" into whether the movant has demonstrated that the action satisfies all of the prerequisites of Federal Rule of Civil Procedure 23(a). *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir.2000). Federal Rule of Civil Procedure 23(a) provides:

> "One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Thus, as a prerequisite to certification of a class action, plaintiffs must show that the action satisfies Federal Rule of Civil Procedure 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996) ("The party seeking the class certification bears the burden of proof."). A district court has broad discretion in determining whether to certify a class; yet, it must exercise that discretion within Rule 23's

framework. *Id.* A district court may not inquire into the merits of the class representatives' underlying claims, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), but should accept the complaint's allegations as true. Nevertheless, a district court cannot certify a class action based on "its designation as such in the pleadings." *Am. Med. Sys.*, 75 F.3d. at 1079. Rather, the district court may only certify a class where "an adequate statement of the basic facts" demonstrates that each of Rule 23's requirements are met. *Id.* Ordinarily, a district court must determine the permissibility of class certification based upon information other than that which is in the pleadings although it may do so based on the pleadings alone where they set forth sufficient facts. *Id.* In making such a determination, a district court may draw reasonable inferences from the facts before it. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 520 (6th Cir.1976).

Plaintiffs' proposed class was "all those female employees of [d]efendant BeCI, past or present, who now ... [work], will ... [work] in the future, or at any time during the five years proceeding [sic] the commencement of this action have worked for ... BeCI." As certified by the district court, the class encompasses "[a]ll those female employees of ... [BeCI], past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for ... [BeCI]." [7] Noting that plaintiffs have not

---

*Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (holding that, "only under the most imperative circumstances," may "the right to a jury trial of legal issues be lost through prior determination of equitable claims"); *Robinson*, 267 F.3d at 170 (noting that the Trial–by–Jury Clause mandates that a jury must first try an issue that is " 'common

to both legal and equitable claims in the same proceeding' ").

7. We recommend that the court re-examine the composition of the class, which includes all those employed in the five years preceding the date upon which plaintiffs filed the action, in light of the requirement that "a party ... must file a charge within either 180 or 300

alleged that BeCI's hiring practices or processes are discriminatory, the court declined to include future hires in the class. Moreover, finding that "OCSEA members cannot adequately represent all other females employees of BeCI because they are not typical of the class," the court further limited the class of female BeCI employees to current or former OCSEA members. According to the district court, it thus redefined the class so as to specify "a particular group (OCSEA-represented female employees) that was harmed during a particular time frame (over the last five years), in a particular location (BeCI), in a particular way (through an alleged pattern of discrimination)."

First, we note that the exact scope of the class is unclear. In the allegations in their complaint, plaintiffs use the term *plaintiffs* synonymously with "all female Correction[s] Officers." Every named plaintiff either currently works as a correction officer or worked as a corrections officers at some point during the class period. Most of the plaintiffs' allegations surround BeCI's discriminatory treatment of them while they worked as corrections officers.[8] In the class certification hearing, plaintiffs defined the female OCSEA members as corrections officers. At that same hearing, the district court, after learning that most of the alleged gender discrimination affected only female corrections officers, expressed its concern that combining female corrections officers with female non-corrections officers may be impermissible under Rule 23(a). In its class

certification order, the district court held that the action satisfies Rule 23(a)(1)'s numerosity requirement based on a class of fifty-nine female corrections officers. Yet, the certified class literally includes OSCEA's 10 other bargaining units, which represent such wide-ranging employment positions as: licensed practical nurses, dental assistants, cooks, laundry workers, painters, graphic artists, clerical and computer staff, storekeepers, biologists, engineers, horticulturists, accountants, attorneys, etc.

Second, we note that the record does not demonstrate that the district court even determined what plaintiffs' individual claims of gender discrimination are.[9] For example, it is unclear whether any named plaintiff suffered injury due to BeCI's alleged discriminatory denial of overtime. As to their claim of discrimination in promotions, it is unclear whether any named plaintiff personally suffered from BeCI's alleged sexual quid-pro-quo demands on female employees; whether any named plaintiff would have been eligible for a promotion had BeCI allegedly not circumvented the posting process on the basis of gender; or whether any named plaintiff had actually applied for and was disparately denied a promotion. Absent information on the precise nature of each of the named plaintiffs' individual discrimination claims, the district court would have no basis upon which to determine adequately-as part of the requisite "rigorous analysis"-whether the named plaintiffs are proper

---

days of the date ... [upon which the discriminatory act occurred] or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

8. For example, plaintiffs allege discriminatory violations of the "Pick–A–Post Agreement," which apparently only governs corrections officers.

9. Neither the complaint nor the motion for class certification alleges the discriminatory treatment that each named plaintiff suffered personally. While that information may be in the plaintiffs' answers to interrogatories, there is no indication that the district court considered those answers in conducting its analysis.

representatives under Rule 23(a) or whether they are even members of the class in that they "possess the same interest and suffer the same injury." *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (internal quotation marks omitted).

Third, we note that the record does not demonstrate that the district court conducted a "rigorous analysis" as to whether the plaintiffs have shown that the action satisfies Rule 23(a)(2)'s commonality requirement.[10] Rule 23(a)(2) mandates that "questions of law or fact common to the class" exist. "The commonality test is qualitative rather than quantitative" in that "there need be only a single issue common to all members of the class." *Am. Med. Sys.*, 75 F.3d at 1080. On the other hand, not every common question will suffice because, "at a sufficiently abstract level of generalization, almost any set of claims . . . could display commonality." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998). Rather, there must be "a common issue the resolution of which will advance the litigation." *Id.*

In *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court repudiated a liberal construction of Rule 23(a) that would ordinarily permit "across-the-board" Title VII class actions, in which named plaintiffs would raise claims on behalf of the class that were different than their individual claims on the ground that the employer's alleged discrimination based on a class characteristic "pervaded, in an across-the-board fashion, all of the employer's personnel policies and practices." *Griffin v. Dugger*, 823 F.2d 1476, 1484–85 (11th Cir.1987). In *Falcon*, the district court had permitted Falcon, who alleged that the defendant had not promoted him because he is a Mexican–American, to maintain a class action alleging a pattern or practice of national origin discrimination in violation of Title VII on behalf of both Mexican–American employees whom the defendant denied promotions and Mexican–American applicants for employment whom the defendant had not hired. *Falcon*, 457 U.S. at 150–52, 155. In upholding the class certification on appeal, the Fifth Circuit reasoned: "[The across-the-board rule] permits an employee complaining of one employment practice to represent another [employee] complaining of another practice, if the plaintiff and the members of the class suffer from essentially the same injury. In this case, all of the claims are based on discrimination because of national origin." *Id.* at 153 (citing *Falcon v. General Tel. Co.*, 626 F.2d 369, 375 (5th

---

10. In this appeal, defendant BeCI contends that the district court abused its discretion in concluding that the plaintiffs have shown that the action satisfies Rule 23(a)(2)'s commonality requirement. Although our analysis centers upon whether the district court conducted the requisite "rigorous analysis" as to the commonality requirement, in particular, we express no opinion as to whether it did so regarding Rule 23(a)'s other requirements; rather, we trust that the district court, on remand, will determine the permissibility of the class certification only after ensuring that it conducted a "rigorous analysis" as to whether the plaintiffs have shown that the action meets *all* of Rule 23(a)'s requirements. We note that, as the Supreme Court has observed, the requirements of commonality, typicality, and adequacy of representation tend to merge because they "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class [members'] claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Cir.1980)) (internal quotation marks omitted).

In its analysis, the Supreme Court first underscored that Rule 23(a)'s requirements effectively restrict the class claims to those that the named plaintiffs' claims fairly encompass, and that "a class representative must be part of the class and possess the *same interest* and suffer the *same injury* as the class members." *Id.* at 156 (internal quotation marks omitted) (emphasis added). As the Court cautioned, although discrimination is necessarily class discrimination, an allegation of discrimination neither demonstrates that the action satisfies Rule 23(a)'s requirements nor defines the proper scope of any class. *Id.* at 157. As the Court explained:

> Conceptually, there is a wide gap between (a) an individual's claim that he had been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and the individual's claim will be typical of the class claims.

*Id.* To bridge that gap, according to the Court, plaintiff Falcon must show more than that the defendant denied him a promotion based on his national origin, but must support the additional inferences that: 1) this particular discrimination is typical of the defendant's promotion practices; 2) a policy of ethnic discrimination that pervades Falcon's employment division motivates defendant's promotion practices; and 3) defendant's other employment practices, like hiring, reflect this policy of ethnic discrimination "in the *same way* [that] it is manifested in the promotion practices." *Id.* at 157–58 (em-

phasis added). To illustrate, the Court gave two examples of a class action encompassing both employees and applicants that would satisfy both the commonality and typicality requirements: 1) one in which the defendant employer had "used a biased testing procedure to evaluate both applicants for employment and incumbent employees"; and 2) one for which significant evidence exists that "an employer operated under a general policy of discrimination ... if the discrimination manifested itself in hiring and promotion practices in the *same general fashion,* such as through entirely subjective decisionmaking processes." *Id.* at 159 n. 15 (emphasis added). The Court reasoned that "Title VII prohibits discriminatory employment *practices,* not an abstract policy of discrimination." *Id.* Reiterating that "one allegation of specific discriminatory treatment" is insufficient to support an across-the-board Title VII class action, the Court held that plaintiff's pleadings had provided an insufficient basis for the district court to conclude that the adjudication of plaintiff's claim of promotion discrimination would entail the adjudication of any common question concerning defendant's hiring discrimination. *Id.* at 158–59. Here, plaintiffs' pleadings contend that commonality exists because questions of law and fact and the requested relief are common to the class; specifically, plaintiffs' complaint alleges that: "each [p]laintiff asserts that ... [she has] been the victim of gender discrimination during the tenure of ... [her] employment with [d]efendant BeCI.... [BeCI's] gender discriminatory behaviors have affected the rights and expectations of each member of the class.... [BeCI has] willfully and intentionally discriminated against [p]laintiffs because of their gender." In their memorandum supporting their motion for class certification, plaintiffs further allege that the legal question of whether BeCI's con-

duct violates Title VII and the factual issue of BeCI's "unspoken policies, procedures and treatments" are common to each class member. In the class certification hearing, plaintiffs asserted that the court should not break down each of the named plaintiff's individual discrimination claims by the particular type of employment decision so as to find commonality lacking, but, rather, that the court should find commonality due to the "gender discrimination in any of its forms." Moreover, plaintiffs claimed that commonality exists simply because it is a "gender discrimination Title VII action." After conducting the class certification hearing, the district court held that the plaintiffs have satisfied the commonality requirement because they alleged "that the [d]efendant has engaged in a general pattern or practice of discrimination against women that violates Title VII by its various employment actions and decisions that have disproportionately harmed female employees" and because the legal question of whether BeCI's alleged practices violate Title VII-"essentially the only legal question involved in this case"-is common to the class.

Because the complaint and class certification motion tell us nothing about the named plaintiffs' individual discrimination claims, it is uncertain whether they are raising claims on behalf of the class that are different from their individual claims, as in *Falcon*. Without deciding, we note that, if the plaintiffs were launching such an "across-the-board" Title VII claim, commonality under *Falcon* would require the plaintiffs to allege more than an "abstract [or general] policy of [gender] discrimination." *Falcon*, 457 U.S. at 159 n. 15. Rather, plaintiffs would have to allege "significant proof" that BeCI operated under a general policy of gender discrimination that resulted in gender discrimination manifesting itself in "the same general

fashion" as to each of the kinds of discriminatory treatment upon which the pattern-or-practice class action rests. *Id.*

In sum, we find that this record does not demonstrate that the district court conducted the "rigorous analysis" necessary to determine whether plaintiffs have shown that the action meets all of Rule 23(a)'s requirements, and the district court, in certifying a (b)(2) class, did not address the method by which the individual claims would be determined. For the foregoing reasons, we VACATE the class certification under Rule 23(b)(2) and REMAND for further proceedings consistent with the opinion.