**Rachel REEB, et al., Plaintiffs,**

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION BELMONT CORRECTIONAL INSTITUTION, et al., Defendants.**

No. 2:00–CV–774.

United States District Court,
S.D. Ohio,
Eastern Division.

June 2, 2004.

466

Nicholas E. Kennedy, Kennedy & Knoll, Columbus, OH, for Plaintiffs.

Jack Wilson Decker, Ohio Attorney General, Columbus, OH, for Defendants.

### OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Plaintiffs' Motion for Class Certification pur-

suant to the Sixth Circuit's remand order issued upon resolution of the interlocutory appeal of Defendant Ohio Department of Rehabilitation and Corrections/Belmont Correctional Institute ("BeCI").

The Plaintiffs, Rachel Reeb, Verna Brown, Glenna Mackey, and Jill Beabout, are all employees at BeCI in St. Clairsville, Ohio, who have brought a sex discrimination claim under Title VII, 42 U.S.C. § 2000e, against the Ohio Department of Rehabilitation and Corrections/Belmont Correctional Institute. On February 16, 2001, the Plaintiffs filed a Motion for Class Certification. On October 24, 2001, this Court granted the Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(2) but denied the Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(3). The Court defined the certified class as follows:

> All those female employees of Defendant Belmont Correctional Institute, past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant Belmont Correctional Institute.

Subsequently, the Sixth Circuit vacated this Court's class certification ruling under Rule 23(b)(2) and remanded the case, with instructions for this Court to conduct a "rigorous analysis" as to whether the Plaintiffs have met all of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). Pursuant to the following rigorous analysis, the Court **GRANTS** the Plaintiffs' Motion for Class Certification under Rule 23(b)(2). The Court defines the (b)(2) class as follows:

> All those female employees of Defendant Belmont Correctional Institute, past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant Belmont Correctional Institute as corrections officers.

1. The following facts are taken in large part from this Court's October 24, 2001, Opinion and Order.

2. BeCI is the only Defendant that remains in this action because the Plaintiffs have voluntarily dis-

## II. BACKGROUND[1]

Belmont Correctional Institute ("BeCI")[2] is a prison operated by the Ohio Department of Rehabilitation and Corrections. BeCI employs 528 persons who are represented by three different unions, District 1199, Ohio Civil Service Employees Association ("OCSEA"), and Ohio Education Association ("OEA"). Other employees of BeCI are classified as civil servants.

Plaintiffs Reeb and Brown are female corrections officers at BeCI who were hired in 1995, and are members of OCSEA. Plaintiff Mackey is also a corrections officer and member of OCSEA, but for some period of time beginning on May 18, 2000, she was placed in a Temporary Work Level as a Secretary. Plaintiff Beabout is also a member of OCSEA who began working for BeCI in 1995. On January 16, 2000, Ms. Beabout was promoted from corrections officer to the position of Records Officer on a permanent basis after holding that position at a Temporary Work Level.

The Plaintiffs allege that, for over five years, they have been treated differently, held to different standards, and given different duties as compared to similarly situated male corrections officers. The Plaintiffs further allege that they have been denied promotions and, as a result, seventeen out of the eighteen Captain and Lieutenant positions at BeCI are held by men. They assert that female corrections officers are denied leave and overtime, are given undesirable positions, are pulled off of their posts, and are replaced with male officers. Furthermore, they claim that female corrections officers are written up for alleged infractions although male corrections officers are not written up for similar infractions. According to the Plaintiffs, women who have had intimate relations with the Warden or other supervisors have been treated better than other female employees.

missed Warden Tate as a defendant. Furthermore, the only claim that remains against BeCI is the Title VII claim because the Plaintiffs have voluntarily dismissed all state law claims raised in the Complaint.

The Plaintiffs attribute the lack of female promotions, at least in part, to the fact that male officers socialize with Warden Tate. They assert that male officers receive promotions as a result of their social ties to the Warden, while more qualified women who do not socialize with him are not promoted. Furthermore, they claim that BeCI uses the "temporary position" to place hand-selected men into positions over more qualified women. As the temporary positions become permanent, the posting requirements are circumvented, thus preventing the female corrections officers from applying for the promotions.

Based on the foregoing allegations, the Plaintiffs filed a Complaint with this Court on July 7, 2000. The Complaint sought relief under the Ohio Revised Code and Title VII from both BeCI and Warden Tate. On February 16, 2001, the Plaintiffs filed a Motion for Class Certification. On April 30, 2001, the Plaintiffs filed a notice of partial voluntary dismissal as to all of their state claims and as to their Title VII claim against Warden Tate. On September 13, 2001, the Court held a hearing on the Plaintiffs' Motion for Class Certification. Pursuant to an Opinion and Order dated October 25, 2001, the Court granted certification of a Rule 23(b)(2) class but denied certification of a Rule 23(b)(3) class. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 203 F.R.D. 315 (S.D.Ohio 2001).

The Sixth Circuit granted the Defendants permission to appeal the class certification decision. Pursuant to a November 19, 2003, unreported decision, the Court of Appeals vacated this Court's class certification under Rule 23(b)(2) and remanded the case for further proceedings. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed.Appx. 550, 559 (6th Cir.2003). Specifically, the Court of Appeals urged this Court to conduct a "rigorous analysis" to determine whether the Plaintiffs have shown that the action meets all of Rule 23(a)'s requirements. *Id.* The Sixth Circuit further noted that it is "unable to review whether the injunctive or declaratory relief predominates over the monetary relief, as Rule 23(b)(2) requires." *Id.* at 554–55.

## III. ANALYSIS

### A. Class Definition

■ In its November 19, 2003, decision, the Sixth Circuit raised two issues with respect to the class composition in this case. The Sixth Circuit noted that the exact scope of the class is unclear since this Court seemed to consider the class to consist of all female corrections officers, though the final definition, which referred to OCSEA members, literally includes members of all 11 OCSEA bargaining units rather than only the corrections officers. *Reeb*, 81 Fed.Appx. 550, 555–57. The Court of Appeals also recommended that this Court re-examine the composition of the class in light of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), which addressed the requirement that a party must file a charge of discrimination within either 180 or 300 days of the date of the discriminatory action or lose the ability to recover based on the discrimination. *Reeb*, 81 Fed.Appx. 550, 556 n. 7.

The Court of Appeals is correct that this Court equated female OCSEA members with female corrections officers. The class of OCSEA members does appear to be broader than the class of corrections officers. A more precise class definition therefore would refer directly to corrections officers:

> All those female employees of Defendant Belmont Correctional Institute, past or present, who are members of OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant Belmont Correctional Institute *as corrections officers.*

■ The Court now turns to a discussion of *Morgan's* impact on this case. As a procedural prerequisite to bringing a civil suit under Title VII, an individual must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 or 300 days after the alleged unlawful practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1). Since Ohio is a deferral state, those allegedly discriminatory actions that occurred within 300 days prior to the filing of the charge are actionable. *See*

42 U.S.C. § 2000e–5(e)(1); *Perazzo v. Top Value Enters.,* 590 F.Supp. 428, 431–32 (S.D.Ohio 1984).

Prior to *Morgan,* the Sixth Circuit recognized two categories of continuing violations:

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work. The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination. This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

*Burzynski v. Cohen,* 264 F.3d 611, 618 (6th Cir.2001) (citation and internal quotation marks omitted). Under either category of continuing violation, a plaintiff, upon demonstrating such a violation, was " 'entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.' " *Alexander v. Local 496, Laborers' Int'l Union,* 177 F.3d 394, 408 (6th Cir.1999) (quoting *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996)); *see Haithcock v. Frank,* 958 F.2d 671, 677 (6th Cir.1992) (stating that when "there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period").

In *Morgan,* the Supreme Court limited the viability of the continuing violation doctrine. The Court reversed the Ninth Circuit's holding that so long as one act in a "serial violation" falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered in determining liability. The *Morgan* Court reasoned,

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180–or 300–day time period after the discrete discriminatory act occurred.
>
> . . .
>
> Discrete acts [include] termination, failure to promote, denial of transfer, or refusal to hire. . . .

*Morgan,* 536 U.S. at 113–14, 122 S.Ct. 2061.

The Court further held that, unlike a claim based on discrete discriminatory acts, a claim based on a hostile work environment "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Id.* at 117, 122 S.Ct. 2061 (quoting 42 U.S.C. § 2000e–5(e)(1)). A hostile work environment claim is based on the cumulative effect of these individual acts over a period of time and thus cannot be said to occur on any particular day. *Id.* at 115, 122 S.Ct. 2061. Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117, 122 S.Ct. 2061.

The Sixth Circuit subsequently has recognized that, though *Morgan* curtailed the first category of continuing violations, it did not implicate the second category of continuing violations, involving long standing and demonstrable policies of discrimination. *Sharpe v. Cureton,* 319 F.3d 259, 268 (6th Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 228, 157 L.Ed.2d 138 (2003). To establish this category of continuing violation, a plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." *Haithcock,* 958 F.2d at 678–79 ("Unrelated incidents of discrimination will not suffice to invoke [the second] exception; rather there must be a continuing over-arching policy of discrimination.") (quotation marks omitted). Rather, "[t]he preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *EEOC v. Penton Indus.*

*Publ'g Co.*, 851 F.2d 835, 838 (6th Cir.1988) (quotation marks omitted).

In *Sharpe*, the court refused to find a second category continuing violation, noting that "the plaintiffs do not represent a class, and have otherwise failed to allege class-wide discriminatory action." *Sharpe*, 319 F.3d at 269. The opposite is true here. The Plaintiffs do purport to represent a class of female corrections officers that has been harmed by a long standing and demonstrable policy of gender based discrimination. The Plaintiffs have not solely alleged discriminatory treatment against them, and they do not seek to recover based on unrelated instances of discrimination. Rather, Plaintiffs' theory has been that all discriminatory conduct by BeCI is part of an overarching policy designed to deter the advancement of women.

■ Because the Plaintiffs are able to make out a second category continuing violation, *Morgan* does not impact this case.[3] As discussed in this Court's previous Opinion, *Reeb*, 203 F.R.D. at 318–19, pursuant to the single filing rule, the entire class is entitled to the benefit of the named Plaintiffs having met the procedural prerequisites necessary for this case. *See also Horton v. Jackson County Bd. of County Comm'rs*, 343 F.3d 897, 899–900 (7th Cir.2003) (upholding the single filing rule, at least as applied to class actions, in light of *Morgan*).

## B. Rule 23(a) Requirements

■ Federal Rule of Civil Procedure 23 provides as follows:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). A district court has broad discretion in determining whether to certify a class, within the dictates of Rule 23. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

■ Before certifying a class, a court must engage in "rigorous analysis" of the plaintiff's ability to meet the requirements of Rule 23(a). *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir.2000). The party that moves for class certification has the burden of proof under Rule 23. *Am. Med. Sys.*, 75 F.3d at 1079 (stating that, as a prerequisite to certification of a class action, plaintiffs must show that the action satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation).

■ Although the plaintiff bears the burden of proof, the court must not inquire into the merits of the underlying claims of the class representative. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). A court should ac-

---

**3.** Even if the Plaintiffs had not sufficiently alleged a second category continuing violation, their claims are sufficiently similar to a hostile work environment claim that they would fall within what remains of a first category continuing violation. What was struck down in *Morgan* was the practice of using recent, discrete discriminatory acts to put before the court evidence of older, allegedly related, discrete discriminatory events. For example, a plaintiff who was denied a promotion, then one year later denied a transfer, then one year later terminated, may only recover based on the termination. In *Morgan*, the Court contrasted such a situation with the situation posed with regard to a hostile work environment claim. The operative question is when the "unlawful employment practice" at issue may be said to have "occurred." *Morgan*

at 110, 122 S.Ct. 2061. The unlawful employment practice claimed by the Plaintiffs occurred continuously over a period of years and translates into present discriminatory activity. The Plaintiffs do not seek to recover so much for discrete discriminatory acts, such as specific instances of forcing women into less desirable work assignments, as for the overarching policy that has led to numerous Title VII violations. This overarching policy, like a hostile work environment, did not "occur" on any particular day; so long as any evidence of that discriminatory policy falls within the 300 day period, then all evidence that relates to that policy will be admissible and all class members, as the class is currently defined, will be able to recover for harm caused by that policy.

cept as true the plaintiff's allegations in the complaint. *Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576, 579 (S.D.Ohio 1993). Resolution of the class certification issue may, however, require the court "to probe behind the pleadings." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364. Although, "[i]n ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings," *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 523 (6th Cir. 1976), plaintiffs may not rely on pure speculation to satisfy Rule 23's requirements. *Cwiak v. Flint Ink Corp.,* 186 F.R.D. 494, 497 (N.D.Ill.1999); *see Am. Med. Sys.,* 75 F.3d at 1079 (noting that a court may not certify a class action based solely on "its designation as such in the pleadings," but only where "an adequate statement of the basic facts" demonstrates that each of Rule 23's requirements are met). Even after certification, a court may decertify a class if there is a subsequent showing that the grounds for granting certification no longer exist or never existed. *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364.

## 1. Numerosity

■ Rule 23(a)(1) requires the purported class to be "so numerous that joinder of all members is impracticable...." Numerosity, although so named, imposes no specific numerical requirements upon the class. A threshold number of class members is not required, though numbers alone may be sufficient to satisfy numerosity if the numbers are great enough. *Am. Med. Sys.,* 75 F.3d at 1079 ("When class size reaches substantial proportions ... the impracticability requirement is usually satisfied by the numbers alone."). The determination of whether this element has been satisfied " 'requires examination of the specific facts of each case and imposes no absolute limitations.' " *Id.* (quoting *Gen. Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). In determining whether joinder is impracticable, the court may consider not only the number of plaintiffs, but also "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class

members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief...." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993).

■ As of the time of the class certification hearing, Defendant BeCI employed fifty-nine women as corrections officers. The Court may infer that the number of class members would be somewhat larger since the class definition includes all women who were so employed from July 1995 to the present. Although this number may seem small enough to make joinder practicable, courts have certified smaller classes when deemed appropriate under the circumstances. *E.g., Lanning v. Southeastern Pa. Transp. Auth.,* 176 F.R.D. 132, 147 (E.D.Pa. 1997) (finding class of 22 to meet numerosity requirement); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56–57 (N.D.Ill.1996) (finding that plaintiff's proposed class of 18 satisfied numerosity requirement); *Grant v. Sullivan,* 131 F.R.D. 436, 446 (M.D.Pa.1990) (noting that a court may certify a class made up of as few as 14 people, particularly where the relief sought is injunctive or declaratory); *see also Sanft v. Winnebago Indus., Inc.,* 214 F.R.D. 514, 522 (citing cases), *amended in part by* 216 F.R.D. 453 (N.D.Iowa 2003). Indeed, courts are in agreement that, as a general rule, classes of 40 or more are sufficiently numerous to satisfy Rule 23(a)(1). 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 3.05 (3d ed.1992); *see, e.g., Morris v. Risk Mgmt. Alternatives, Inc.,* 203 F.R.D. 336, 342 (N.D.Ill.2001) ("Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met."); *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 262 (S.D.Cal.1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

Furthermore, judicial economy clearly is served if these women can bring their claims together in one action rather than individually, especially in light of the fact that an injunction prohibiting future discrimination,

the primary relief sought, would apply to all of the class members equally. *See Young v. Pierce,* 544 F.Supp. 1010, 1028 (E.D.Tex. 1982) (a small class may be certifiable if the relief sought is injunctive in nature and the benefits will flow to a future class of indefinite size). Additionally, it is unlikely that the majority of the class members have the financial resources necessary to bring individual suits. The issue of class members' inability to vindicate their own interests is heightened where, as here, potential class members might be reluctant to bring suit due to fears of retaliation.

 The Defendant contends that joinder is practicable because the potential class members are readily identifiable from the Defendant's records and are all probably located in a relatively small geographic area. Such factors, however, are not dispositive on the issue of numerosity. *Sorensen v. CHT Corp.,* Nos. 03 C 1609, 03 C 7362, 2004 WL 442638, at *9 (N.D.Ill. Mar.10, 2004) (finding class of 50 "more than adequate to meet the numerosity requirement"); *see Foster v. D.B.S. Collection Agency,* No. 01–CV–514, 2002 WL 484500, at *6 (S.D.Ohio Mar.26, 2002) (finding class of 40 to meet numerosity requirement despite lack of geographic dispersion). In the particular circumstances of this case, the Plaintiffs have shown that joinder is impractical and, therefore, have met the numerosity requirement.[4]

### 2. Commonality

 Rule 23(a)(2) mandates that "questions of law or fact common to the class" must exist. To meet the commonality requirement, there need be only a single legal or factual issue common to all members of the class. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir.1996); *see also Meiresonne v. Marriott Corp.,* 124 F.R.D. 619, 622 (N.D.Ill.1989) (noting that commonality is not a demanding requirement). On

the other hand, not every common question will suffice because, "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998). Rather, there must be "a common issue the resolution of which will advance the litigation." *Id.* As this Court previously has held, commonality exists " 'as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation.' " *Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576, 580 (S.D.Ohio 1993) (quoting *Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D.Ohio 1992)).

 In its November 19, 2003, decision, the Sixth Circuit expressed an opinion that this case comes perilously close to the sort of "across-the-board" Title VII claim that was disallowed as a class action in *General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). *Reeb v. Ohio Dep't of Rehab. & Corr.,* 81 Fed.Appx. 550, 557–59 (6th Cir.2003). The court noted that because the Plaintiffs provided little information about their individual discrimination claims, it is uncertain whether they are raising claims on behalf of the class that are different from their individual claims, as in *Falcon. Reeb,* 81 Fed.Appx. 550, 559. The Sixth Circuit further stated that if the Plaintiffs were launching an "across-the-board" claim, they would have to allege, as per footnote 15 of *Falcon,* more than an "abstract [or general] policy of [gender] discrimination," but, rather, would have to provide "significant proof" that BeCI operated under a general policy of gender discrimination that resulted in such discrimination manifesting itself "in the same general fashion" as to the named Plaintiffs and the members of the proposed class. *Id.* (quoting *Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364).

---

4. The Defendant's attempt to defeat numerosity by claiming that the proposed class must be broken down into subsets of the various types of alleged disparate treatment must fail. All of the alleged discriminatory practices are based on the same theory of disparate treatment of female employees at BeCI, whether it be in promotions, overtime, posts, or discipline. The Defendant has cited no authority for the proposition that numerosity must be considered in terms of such subsets. Furthermore, since it is the overarching policy of discrimination of which the Plaintiffs primarily complain, rather than specific discriminatory instances *per se,* to consider the Plaintiffs' claims in terms of these subsets would be illogical.

After a careful reading of *Falcon*, this Court is not convinced that that case necessitates a finding of lack of commonality here. This Court has already held, in a ruling that was not challenged on appeal, that common issues do not predominate over individual issues in this case, so class certification pursuant to Rule 23(b)(3) is not appropriate. Rule 23(a)(2), however, requires far less: only one common issue, "the resolution of which will advance the litigation," is necessary. *Sprague*, 133 F.3d at 397. For the reasons stated in its initial class certification Opinion, as well as for the additional reasons provided here, this Court holds that the Plaintiffs have met the commonality requirement since the issue of whether the Defendant's alleged practices violate federal law is a question common to the class.

*Falcon* stands for the proposition that one person who suffered from one discriminatory act may not, merely because he is a member of a protected group, bring a claim based on all discrimination suffered by all members of that group at the hands of his employer. The case involved a Mexican–American employee who was denied a promotion while whites with less qualification and experience and lower evaluation scores were promoted more rapidly. The Court held that the plaintiff could not serve as class representative for a class of Mexican–American applicants for employment whom the employer did not hire. The Court explained as follows:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Falcon* at 157, 102 S.Ct. 2364.[5]

The complaint contained no factual allegations regarding the employer's hiring practices. Furthermore, there were no common questions of law or fact between the two claims: the plaintiff's individual claim was based on a "disparate treatment" theory and involved evaluation of the comparative qualifications of the applicants to the promotion as well as the credibility of those who made the promotion decision, while the class claim was based on an "adverse impact" theory and involved analysis of statistics concerning the defendant's hiring patterns. Chief Justice Burger, writing separately, noted that "the bare fact that a plaintiff alleges racial or ethnic discrimination is not enough to justify class certification" and stated that "the only commonality is that respondent is a Mexican–American and he seeks to represent a class of Mexican–Americans." *Falcon*, 457 U.S. at 162, 102 S.Ct. 2364 (Burger, C.J., concurring in part and dissenting in part).

This case is readily distinguishable from *Falcon*. *Falcon* involved one plaintiff who had been subjected to one form of discrimination, yet he sought to represent a class—of which he was not a part—that had been subjected to a completely different form of discrimination. *See Staton v. Boeing Co.*, 327 F.3d 938, 955 (9th Cir.2003) (stating that *Falcon* "does not generally ban all broad classes but rather precludes a class action that, on the basis of one form of discrimination against one or a handful of plaintiffs,

---

5. In footnote 15, the Court provided two examples of the sort of cases in which one class representative could represent such disparate classes as both employees and applicants:

> If petitioner used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the dis-

crimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision-making processes. In this regard, it is noteworthy that Title VII prohibits discriminatory employment *practices*, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.

*Falcon* at 159 n. 15, 102 S.Ct. 2364.

seeks to adjudicate all forms of discrimination against all members of a group protected by Title VII, § 1981, or a similar statute"); *Bouman v. Block,* 940 F.2d 1211, 1232 (9th Cir.1991) (finding the *Falcon* concern inapplicable where class status was not sought on the basis of a single discriminatory practice that harmed the plaintiff only); *see also Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569–70 (11th Cir.1992) (finding that *Falcon* prohibits certification of a class challenging *every* employer practice with respect to that class but permits the certification of race or sex based classes if the class challenges specific employment practices).

Here, the Plaintiffs challenge specific discriminatory employment practices that have affected them as well as other members of the class.[6] Many of the alleged practices—such as the general claims of different treatment and standards, the requirement that women more often perform the undesirable duties, and the inability to apply for promotions based on the use of temporary positions—are likely to apply to all members of the class, including the named Plaintiffs. Other practices—such as the denial of training opportunities and leave, the use of excessive discipline as compared to male employees, and the failure to promote—are more likely to have applied only to certain of the female corrections officers at BeCI. Knowledge of precisely which class members have been subjected to precisely which forms of discrimination is not strictly necessary here, however, because the Plaintiffs have alleged

a pervasive pattern of discrimination that is manifested by these various occurrences.

This case is similar to *Adair v. England,* 209 F.R.D. 5 (D.D.C.2002), in which the plaintiffs, rather than alleging "merely a series of individualized incidents," had alleged a common policy—"a pervasive pattern of religious preferences favoring liturgical Christian chaplains over non-liturgical Christian chaplains." *Adair,* 209 F.R.D. at 10. In granting class certification despite the differences among the plaintiffs' claims, the court noted that "[t]he *overriding theme that runs through all the claims relating to the plaintiffs' free exercise of their religion* is that the Navy has adopted and implemented policies and practices that effectively silence non-liturgical Christian chaplains." *Id.* (quoting *Adair v. England,* 183 F.Supp.2d 31, 65 (D.D.C.2002)).

Similarly, in *Communities for Equity v. Michigan High School Athletic Ass'n,* 192 F.R.D. 568 (W.D.Mich.1999), the court held that the fact that not all named plaintiffs had experienced all of the diverse manifestations of discrimination alleged would not preclude class certification. The case involved allegations of gender discrimination in interscholastic athletic programs. The court noted that *Falcon* had provided for the possibility of broad based attacks on discrimination if there were proof of an underlying policy of discrimination. *Communities for Equity,* 192 F.R.D. at 573. The court found that "the variety of alleged manifestations of discrimination, such as inequitable facilities, scheduling, sanctioning, and rules, present a suffi-

---

**6.** The Plaintiffs allege that female corrections officers, including themselves, (1) have been treated differently, held to a different standard, and given different duties than similarly situated male corrections officers; (2) are frequently required to perform undesirable duties while similarly situated male corrections officers are not assigned to those duties; (3) are routinely removed from their posts and replaced with male officers because 'they are not viewed as capable of handling difficult situations that might arise; (4) are routinely denied leave and/or overtime, while similarly situated males are granted leave and/or overtime despite less valid excuses; (5) are routinely written up for alleged rule violations while similarly situated males are not disciplined for the same or more serious infractions; (6) have been denied training for various reasons while similarly situated male corrections officers

have not been denied such training; (7) are treated less favorably than other female corrections officers who claim to have had sexual relations with the warden or other supervisors; (8) are not promoted while less qualified male corrections officers are promoted due to their social activities with and gifts to the warden; (9) have been retaliated against after filing grievances or complaints regarding the discriminatory treatment; (10) are subjected to harassment, intimidation and threats from male inmates that the male corrections officers condone; (11) have been denied promotions in favor of less qualified, similarly situated male corrections officers; and (12) are prevented from even applying for promotions based on the routine use of temporary positions to preempt the usual requirements of a selection process for promotion positions.

cient case of an underlying policy or practice of discrimination." *Id.*

Here, the Plaintiffs have not alleged unrelated, individualized discriminatory occurrences. Rather, they have presented evidence of an underlying policy or practice of discrimination that has been manifested in numerous ways. As in *Communities for Equity,* the sheer variety of the forms that this discrimination has taken is persuasive evidence that an overarching discriminatory policy exists. According to the Plaintiffs' allegations, all female corrections officers at BeCI have been victims of this policy. The Plaintiffs thus have not attempted the same conceptual leap as in *Falcon. See, e.g., Gonzalez v. Brady,* 136 F.R.D. 329, 331 (D.D.C.1991) ("Plaintiffs cannot 'simply leap from the premise that they were the victims of discrimination to the position that others must also have been.'") (quoting *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985)). The Plaintiffs do not ask this Court to draw any of the extenuated inferences that were necessary in *Falcon. See Staton,* 327 F.3d at 953–54 (finding certification of a large class "united by a complex of company-wide discriminatory practices" to be "far from the theoretical extrapolation sought in *Falcon*"); *Meiresonne v. Marriott Corp.,* 124 F.R.D. 619, 623 (N.D.Ill.1989) (noting that *Falcon* involved an "impermissible leap of faith in inference-drawing" where "the single named plaintiff had complained about promotion policies that affected only employees and had alleged no facts as to hiring practices, yet the certified class had included *both* employees and rejected applicants"). Furthermore, because the Plaintiffs here do not seek to use one injury suffered by them to certify a class that they are not a part of and that has suffered an unrelated injury, footnote 15 of *Falcon* does not apply to the proofs they must make. *See Staton,* 327 F.3d at 955 ("We understand footnote fifteen of *Falcon* to present a demonstrative example rather than a limited exception to the overall skepticism toward broad discrimination [in] class actions.").

■ The fact that there are factual differences among the claims of the putative class members does not defeat certification.

*In re Prudential Ins. Co. Sales Practices Litig.,* 148 F.3d 283, 311 (3d Cir.1998) (affirming class certification despite differing factual claims where claims arose from overarching fraudulent scheme that harmed all class members); *Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 130 (3d Cir.1987) ("Although the named plaintiffs in this case do not share all of the claims of the class, since the various claims alleged appear to stem from a single course of conduct …, we cannot conclude that the district court abused its discretion in holding that the typicality requirement was met."), *overruled in part on other grounds by Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). As long as the members of the class have been subjected to a general policy or practice and the nature and legality of that policy is the focus of the litigation, Rule 23(a)(2) generally is satisfied. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol,* 184 F.R.D. 583, 587 (N.D.Ohio 1998); *Iron Workers Local Union 17 Ins. Fund v. Philip Morris Inc.,* 182 F.R.D. 523, 531–32 (N.D.Ohio 1998); *Hiatt v. County of Adams,* 155 F.R.D. 605, 609 (S.D.Ohio 1994).

The situation here is no different. The central legal issue of this case is whether, as the Plaintiffs allege, the Defendant has engaged in a general pattern or practice of discrimination against women that violates Title VII. Individualized issues will arise in order to establish how each class member has been harmed by the Defendant's discriminatory policy. Plaintiff has sufficiently alleged, however, *see supra,* note 6, that each class member has been affected by an overarching policy that has merely manifested itself in various ways. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998) (finding "[t]he existence of shared legal issues with divergent factual predicates" to be sufficient to satisfy Rule 23(a)(2)). Because the issue of whether the Defendant violated Title VII will be common to the class, the Plaintiffs have met the commonality requirement of Rule 23(a)(2).

### 3. Typicality

■ A named plaintiff's claim is considered to be typical "if it arises from the same

478

event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996). The requirement has been described as "the representative's interests [being] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* Briefly, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998).

 The Sixth Circuit, in its November 19, 2003, decision, expressed concern that, absent information on the precise nature of each of the named Plaintiffs' individual discrimination claims, this Court would have no basis upon which adequately to determine whether the named Plaintiffs are proper representatives. Rule 23(a)(3)'s typicality requirement, however, is satisfied as long as each class member's claim arises from the same course of events. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993). Substantial identity between the operative facts of the named plaintiffs and the class in general is not necessary. 5 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 24.25 (3d ed.1992). As discussed above, when an overarching policy of discrimination is adequately alleged, the fact that both the named Plaintiffs and the putative class members were equally subjected to that policy is more important than precise identity between the facts of how the policy impacted each class member.[7]

Such facts were present in *In re Prudential Insurance Co. Sales Practices Litigation*, 148 F.3d 283 (3d Cir.1998). There, all of the claims at issue in the case arose from an overarching fraudulent scheme that was the "linchpin" of the complaint. *Prudential*

*Ins. Co. Sales Practices Litig.*, 148 F.3d at 311. Each named plaintiff had alleged either churning, vanishing premium, or investment plan claims, or some combination of the three. The putative class was to include not only people who had suffered from those practices, but also people—unlike the named plaintiffs—who were victims of "other fraudulent sales practices." *Id.* at 310–11. The court upheld class certification, explicitly finding that "the factual distinctions among and between the named plaintiffs and the 8 million putative class members do not defeat a finding of typicality." *Id.* at 311. The court explained its holding as follows:

> The various forms which their injuries may take do not negate a finding of typicality, provided the cause of those injuries is some common wrong.... In this instance, the alleged common scheme provides an appropriate basis for a finding of typicality. Since all members of the class would need to demonstrate the existence of this scheme, their interests are sufficiently aligned that the class representatives can be expected to adequately pursue the interests of the absentee class members.

*Id.* at 312.

 Here, the overriding theme of the Plaintiffs' allegations is the existence of an overarching policy of discrimination against female corrections officers. Since all members of the class would need to demonstrate that this policy of discrimination both exists and violates Title VII, the interests of the named Plaintiffs are sufficiently aligned with the interests of other class members that the named Plaintiffs may be expected adequately to pursue the interests of the absent class members. Since the cause of all of the Plaintiffs' injuries is a common wrong, a finding of typicality is not precluded by the various forms that different class members' injuries might take.[8] *Cf. Sterling v. Velsicol Chem.*

---

7. As noted in *Falcon,* the commonality and typicality requirements of Rule 23(a) tend to merge. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364; *accord* 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1764 (1986). Much of the Court's analysis in discussing the commonality requirement thus is applicable in addressing Rule 23(a)(3).

8. The Defendant argues that a separate class representative is necessary for each particular discriminatory practice that is alleged. Such specificity, however, is not necessary. *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir.2003) (rejecting argument that there must be a class representative for each type of discrimination claim alleged); *see Prudential Ins. Co. Sales Practices Litig.,* 148 F.3d at 311–12.

*Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988) (finding that individualized damages issues will not preclude class treatment).

By narrowing the class from what was requested by the Plaintiffs, this Court already has minimized many of the typicality issues that might have been problematic for this case. By limiting the class to OCSEA members, any problems that may have arisen because of differences between the named Plaintiffs and other class members in regard to promotion practices, leave and overtime policies, work levels, or disciplinary measures have been eliminated. By further limiting the class to corrections officers, the Court has minimized, if not eliminated, any potential intra-class conflicts between management employees and staff employees, as well as between employees performing different jobs. Because the proofs that are required for the individual claims of the named Plaintiffs to prevail are those necessary for the putative class to prevail, the named Plaintiffs satisfy the typicality requirement.

### 4. Adequacy of Representation

 The Sixth Circuit has outlined two criteria to consider in determining whether representation of the class would be adequate: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir.1976). An individual may not be an adequate representative if she is subject to unique defenses that place her in a position that is antagonistic to the interests of the class. *Levels v. AKZO Nobel Salt, Inc.*, 178 F.R.D. 171, 179 (N.D.Ohio 1998). The requirements of commonality and typicality tend to merge with the ade-

quacy of representation requirement: "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364. Rule 23(a)(4)'s adequacy requirement, however, raises the additional concerns of the competency of class counsel and potential conflicts of interest. *Id.*

 In this case, the unnamed class members' interests are virtually identical to those of the named class representatives.[9] Both groups are seeking a cessation of the Defendant's allegedly unlawful practices. Plaintiffs' counsel is experienced in the area of civil rights and employment related actions, including class action litigation. Plaintiffs' counsel is particularly experienced in practicing before the United States District Court for the Southern District of Ohio, Eastern Division. Furthermore, although the Defendant may assert different defenses against the various Plaintiffs and class members, the defenses to the claims by the named Plaintiffs are not so unique as to make the named Plaintiffs antagonistic to the rest of the class. For these reasons, as well as for the reasons explicated in the Court's commonality and typicality analyses, the Court finds that the named Plaintiffs will fairly and adequately represent the class.

### C. Rule 23(b)(2) Analysis

 In order to certify a class under Rule 23(b)(2), the court, after determining that the four prerequisites of Rule 23(a) have been fulfilled, must consider whether "the

---

9. The Court notes that some members of the putative class, unlike the named Plaintiffs, applied for promotions for which they were rejected allegedly because of their sex. This does not defeat the named Plaintiffs' ability to represent the class, however, because the Plaintiffs' claims regarding discriminatory promotions allege not only that the Defendant's discriminatory practices resulted in women being rejected for promotions, but also that they prevented female employees like themselves from finding out about and applying for promotions in the first place.

*See Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir.1989) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367–68, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), for the proposition that Title VII plaintiffs need not have formally applied for positions if they can show that, but for the defendant's discriminatory practices, they would have applied for them). Furthermore, the Court bears in mind that the Plaintiffs are challenging the Defendant's entire pattern of discrimination in its employment of women.

party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2); *see Senter,* 532 F.2d at 522 (stating that the plaintiff "must satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class he seeks to represent falls within one of the subcategories of Rule 23(b)"). According to the Advisory Committee Notes, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 39 F.R.D. 69, 102 (1966).

This Court, in its Opinion and Order dated October 24, 2001, certified a class under Rule 23(b)(2), finding that the Plaintiffs sought declaratory and injunctive relief in their Complaint, that the primary goal of their claim is to ensure that the Defendant treats all of its female corrections officers the same as its male corrections officers, and that the equitable relief sought predominates in this action. *Reeb v. Ohio Dep't of Rehab. & Corr.,* 203 F.R.D. 315, 323–24 (S.D.Ohio 2001). The Defendant had urged this Court to adopt the more stringent standard for Rule 23(b)(2) certification set forth in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998), which held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison,* 151 F.3d at 415 (specifying that "incidental" damages are those damages that flow directly from the award of injunctive or declaratory relief). Noting that the Sixth Circuit had not yet determined whether to follow *Allison,* this Court, relying on *Hoffman v. Honda of America Manufacturing, Inc.,* 191 F.R.D. 530 (S.D.Ohio 1999) (Rice, C.J.), and Lesley Frieder Wolf, *Evading Friendly Fire: Achieving Class Certification After the Civil Rights Act of 1991,* 100 Colum. L.Rev. 1847, 1848–49 (2000), as well as on the plain language of Rule 23(b)(2) and the purpose behind the Civil Rights Act of 1991, 42 U.S.C. § 1981a, rejected the *Allison* approach. *Reeb,* 203 F.R.D. at 323.

The Sixth Circuit, in its November 19, 2003, decision, declined to rule on whether *Allison* states an appropriate standard. *Reeb v. Ohio Dep't of Rehab. & Corr.,* 81 Fed.Appx. 550, 552–55 (6th Cir.2003). Indeed, the Court of Appeals explicitly confined its analysis to Rule 23(a). *Id.* at 554–55. It did, however, note that this Court, in making its initial class certification ruling, did not have the benefit of the Sixth Circuit decision of *Coleman v. General Motors Acceptance Corp.,* 296 F.3d 443 (6th Cir.2002). *Reeb,* 2003 WL 22734623, at 554–55. Finally, the Sixth Circuit also noted, somewhat cryptically, that this Court, in certifying a(b)(2) class, did not address the method by which the individual claims would be determined. *Reeb,* 81 Fed.Appx. at 559.

This Court sees no reason to abandon its earlier analysis or holding with regard to certification of a Rule 23(b)(2) class. The Sixth Circuit still has not squarely addressed *Allison.* In *Coleman,* the court held that compensatory damages under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f (the "ECOA") are not recoverable by a 23(b)(2) class. *Coleman,* 296 F.3d at 447. The court concluded that the injunctive relief requested in the case before it did not predominate over the monetary damages due to the highly individualized determinations that would be required to determine those damages. *Id.* The holding of *Coleman* does not affect this case since it was limited to the ECOA and, more specifically, to the case before the court.

To the extent that the dicta in *Coleman* might be seen to suggest that the class here not be certified, this Court finds the case sub judice distinguishable and notes that sufficient remedies exist to correct any problems that might arise at a later point in the litigation. In holding that monetary damages predominated over the injunctive relief requested, the *Coleman* court relied in part on the general purposes underlying class actions, which cause class treatment of claims to be most appropriate where it is not "economically feasible" for individuals to pursue their own claims. *Id.* at 448–49 (quoting *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)).

The court noted that "the primary justification for class treatment of these claims is largely absent in this case because the ECOA's provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims." *Id.* at 449. While attorney's fees are likewise available for a successful Title VII plaintiff, 42 U.S.C. § 1988, it is not nearly as feasible for individuals to pursue their own claims here as it was in *Coleman. Coleman* involved the charging of increased annual percentage rates to African Americans buying cars. As the court noted, there was no "potential financial bar" to the putative class members bringing individual suits. *Coleman* at 449.

Here, however, any BeCI female corrections officer seeking to recover for gender based discrimination in an individual suit would have to face the very real possibility of retaliation. The Plaintiffs' Complaint alleges retaliation based on complaints and grievances already filed and, for purposes of class certification, the Court is required to accept such allegations as true. *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579 (S.D.Ohio 1993). The Court can well imagine how the fear of retaliation—which was completely absent in *Coleman*—could be a very real bar to the putative class members pursuing individual actions here. Furthermore, the Court is concerned that allowing members to opt out of the class, especially at this early stage, could lead to a situation where a class member would fear that her refusal to opt out would be a cause for retaliation.

This case also is distinguishable from *Coleman* in light of the distinctions that *Coleman* draws between the highly individualized determinations of damages necessary there and determinations of individualized back pay. In explaining why back pay is a permissible remedy for a Rule 23(b)(2) class and compensatory damages under the ECOA are not, the *Coleman* court found (1) that back pay is qualitatively different from compensatory damages because calculation of back pay generally involves less complicated factual determinations and fewer individualized issues;

and (2) that because back pay is an equitable remedy, it does not implicate the issues of procedural fairness and constitutionality raised by compensatory damages. *Coleman* at 449–50. It is true that back pay ordinarily is considered an equitable remedy. *But see Setser v. Novack Inv. Co.*, 638 F.2d 1137, 1142, *vacated in part on other grounds,* 657 F.2d 962 (8th Cir.1981) (en banc). The damages sought here, however, seem more akin to back pay than to the compensatory damages sought in *Coleman.* In *Coleman,* the court noted that "determining the damages of each class member in this case would involve investigation into the practices of multiple auto dealerships whereas a back pay claim typically involves the practices of a single employer." *Coleman,* 296 F.3d at 450. While individualized determinations of damages will almost certainly be necessary here if the case proceeds that far, such determinations will involve only the practices of a single employer (and only in a specific division of that employer) and will otherwise be relatively simple.

In a pattern or practice discrimination claim such as the Plaintiffs have brought, class litigation will create an appreciable measure of judicial economy even if the remedial stage is ultimately resolved on a non-class basis. *Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 168 (2d Cir.2001) (explaining how the issues and evidence relevant to the individual adjudications will be substantially narrowed by class litigation of the liability phase, and noting that the need for a remedial phase would be obviated entirely if the defendant succeeds on liability) (citing *Craik v. Minn. State Univ. Bd.,* 731 F.2d 465, 470 (8th Cir.1984)), *cert. denied,* 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002). The Second Circuit, in *Robinson,* rejected the *Allison* bright line approach in favor of a case by case determination of whether injunctive or declaratory relief predominates over monetary damages. The court addressed the procedural fairness and constitutionality issues discussed in *Coleman:*

> [C]ertification of a claim for non-incidental damages under Rule 23(b)(2) poses a due process risk because this provision does not expressly afford the procedural protections of notice and opt out.... But,

any due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members for those portions of the proceedings where the presumption of class cohesion falters—*i.e.*, the damages phase of the proceedings. A district court acting under its Rule 23(d)(2) discretionary power may require that an opt-out right and notice thereof be given should it believe that such a right is desirable to protect the interests of the absent class members.

*Robinson,* 267 F.3d at 166 (footnote, citations, brackets, and internal quotation marks omitted). Additionally, the Court notes that decertification of the class is always an option if, at any point in the litigation, class treatment is no longer feasible. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Thus, based on *Robinson* and its rationale, as well as for the reasons stated in this Court's October 24, 2001, Opinion and Order, the Court finds that the Plaintiffs have met the requirements to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(2). The Plaintiffs sought injunctive relief in their Complaint.[10] Indeed, the Plaintiffs have emphasized throughout this litigation that their primary goal is to secure a cessation of the Defendant's unlawful practices and ensure that the Defendant treats all of its employees the same, regardless of their sex. According to *Robinson,* a court considering a(b)(2) certification should satisfy itself that "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Robinson,* 267 F.3d at 164. Both of the *Robinson* factors are met here. The named Plaintiffs could have recovered their individual monetary damages in individual actions. The fact that they are seeking to prosecute a class action is evi-dence of the importance they accord to obtaining class wide injunctive relief. Similarly, if the Plaintiffs succeed in establishing that the Defendant has engaged in a pattern or practice of gender discrimination, injunctive relief would be wholly necessary and appropriate. Because the equitable relief sought predominates in this case, the Court finds that certification under Rule 23(b)(2) is proper.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification under Rule 23(b)(2). The (b)(2) class certified is defined as follows:

> All those female employees of Defendant Belmont Correctional Institute, past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant Belmont Correctional Institute as corrections officers.

**IT IS SO ORDERED.**

---

**10.** Although their prayer for relief merely includes requests for $5 million in damages, attorney's fees, and "[t]hat the rights of class members to the relief sought herein be adjudicated and declared," the Plaintiffs, in paragraph 3 of their Complaint, explicitly seek not only damages and attorney's fees but also "injunctive and declaratory relief."